J. Scott Denko (Texas State Bar No. 00792457) (*Pro Hac Vice*)
Bradley D. Coburn (Texas State Bar No. 24036377) (*Pro Hac Vice*)
Steven J. Lauff (Texas State Bar No. 24013011) (*Pro Hac Vice*)
DENKO COBURN LAUFF LLP
1501 S. MoPac Expy., Suite A315
Austin, TX 78746
Telephone: (512) 906-2074
Facsimile: (512) 906-2075
Email: denko@dcllegal.com
    coburn@dcllegal.com
    lauff@dcllegal.com

Perry R. Clark (California Bar No. 197101)
LAW OFFICES OF PERRY R. CLARK
825 San Antonio Road
Palo Alto, CA 94303
Telephone: (650) 248-5817
Facsimile: (650) 618-8533
Email: perry@perryclarklaw.com

Counsel for Plaintiff
POSITIVE TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **POSITIVE TECHNOLOGIES, INC.,**<br><br>　　　　　　**Plaintiff,**<br><br>　vs.<br><br>**SONY ELECTRONICS, INC., AMAZON.COM, INC., AND BARNES & NOBLE, INC.,**<br><br>　　　　　　**Defendants.** | Case No.: 11-CV-2226 SI<br><br>**PLAINTIFF POSITIVE TECHNOLOGIES' OPPOSITION TO DEFENDANTS' MOTION (DOC. 377) FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**<br><br>Hearing:　January 25, 2013<br>Time:　　9:00 a.m.<br>Ctrm:　　10, 19th Floor<br>Judge:　　Hon. Susan Illston |

# TABLE OF CONTENTS

I. APPLICABLE LAW ..................................................................................................2

II. ARGUMENT ............................................................................................................3

    A. Defendants Do Not Carry Their Burden to Show Diligence............................3

    B. All Evidence Shows Defendants' Lack of Diligence........................................4

        1. Defendants Included and/or Charted Polarity-Dependent/ Ferroelectric References in Their October 26, 2011 Invalidity Contentions..................6

        2. The New References Defendants Seek To Add Were Prominently and Repeatedly Before The Defendants at Least as Early as October 26, 2011..................................................................................................................9

    C. Undue Prejudice...............................................................................................11

III. CONCLUSION .......................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Acer Inc. v. Technology Properties Ltd.*, Case No. 5:08-cv-00877 JF/HRL,
  2010 U.S. Dist. LEXIS 142472 (N.D. Cal. Sept. 10, 2010) ................................................. 4, 11

*C&C Jewelry Mfg., Inc. v. West*, Case No. 5:09-cv-01303-JF,
  2011 U.S. Dist. LEXIS 102161 (N.D. Cal. Mar. 4, 2011) ......................................................... 2

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
  467 F.3d 1355 (Fed. Cir. 2006) ..................................................................................... 2, 3, 11

*Oracle Amer., Inc. v. Google Inc.*, No. C 10-03561 WHA,
  2011 U.S. Dist. LEXIS 87251 (N.D. Cal. Aug, 8, 2011) ........................................................... 2

*Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA (EMC),
  2009 U.S. Dist. LEXIS 85425 (N.D. Cal. Jun. 12, 2009) ...................................................... 3, 5

*West v. Jewelry Innovations, Inc.*, Case No. C 07-1812 JF (HRL),
  2008 U.S. Dist. LEXIS 84928 (N.D. Cal. Oct. 8, 2008) ..................................................... 2, 3, 11

*Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550 SI,
  2007 U.S. Dist. LEXIS 58872 (N.D. Cal. Aug. 6, 2007) ........................................................... 2

**RULES**

Patent L.R. 3-6 ............................................................................................................................ 2, 6

Defendants seek to amend their Invalidity Contentions in the following ways:

- [Proposed] New Prior Art Amendments: To add three new references—namely, the Wahl reference ("Wahl"); U.S. Patent No. 4,964,699 ("Inoue"); and U.S. Patent No. 4,904,064 ("Lagerwall," collectively with Wahl and Inoue, the "New Prior Art") (Dkt. No. 377 at 7.);

- [Proposed] Existing Art Amendments: "[T]o amend…existing claim charts for two prior art references" relating to ferroelectric displays—namely EP 0 368 117 A1 ("Netsu") and U.S. Patent No. 4,864,290 ("Waters", collectively with Netsu, the "Existing Art") (*Id.*); and,

- [Proposed] Other Amendments: To "conform invalidity defenses under 35 U.S.C. § 112 to the Court's claim constructions, remove certain § 112 arguments, and make organizational changes that better focus Defendants' invalidity arguments" (collectively, the "Other Amendments") (*Id.*).

Defendants say that "the proposed amendments…are driven by the Court's claim construction and reflect the Court's claim construction." (*Id.*) Defendants claim that the Court's Claim Construction provides good cause to amend their Invalidity Contentions because "polarity *dependent* display devices known as ferroelectric liquid crystal displays" were not relevant until the Court's July 3, 2012 Claim Construction Order. (Dkt. No. 377 at 2-3, 7.) (italics in original).

The record inexorably shows, however, that contrary to the Defendants' purported post-Markman epiphany, the Defendants fully knew the relevance of "polarity dependent display devices known as ferroelectric liquid crystal displays" at least 8 months before the Court's Claim Construction Order. (Dkt. No. 377 at 7.) This is proven by Defendants' own work. On October 26, 2011, Defendants served Positive with their Invalidity Contentions, which included twenty-one (21) polarity-dependent/ferroelectric references, seventeen (17) of which they charted.

Consequently, Defendants cannot, despite their bald assertions to this Court otherwise, satisfy their threshold burden on diligence. Therefore, their motion should be denied.

I.  **APPLICABLE LAW**

Patent L.R. 3-6 states that "[a]mendment of...the Invalidity Contentions may be made only by order of the Court upon a timely showing of **good cause**." (emphasis added) Under Patent L.R. 3-6, "'good cause' requires a showing of diligence." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006)[1]; *see also Oracle Amer., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 87251, at *8 (N.D. Cal. Aug, 8, 2011) (Alsup, J.) ("Moreover, for purposes of Rule 3-6, 'good cause requires a showing of diligence….'") (citing and quoting *id.*). "'Good cause' must include…an explanation for why an amendment was not included in the original [invalidity contentions]." *Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550 SI, 2007 U.S. Dist. LEXIS 58872, at *9 (N.D. Cal. Aug. 6, 2007) (Illston, J.) (permitting amendment to include new web-based prior art references based on the explanation that such prior art is difficult to find, unlike patents and scholarly articles). Diligence requires the moving party to be diligent both in seeking to amend its invalidity contentions upon discovering an alleged basis for doing so and in discovering the alleged basis for the proposed amendment. *See West v. Jewelry Innovations, Inc.*, Case No. C 07-1812 JF (HRL), 2008 U.S. Dist. LEXIS 84928, at *7 (N.D. Cal. Oct. 8, 2008). "When a court examines the question of good cause to amend invalidity contentions [to include new art], the 'critical issue' is whether the moving party has exercised diligence in discovering the prior art." *C&C Jewelry Mfg., Inc. v. West*, Case No. 5:09-cv-01303-JF, 2011 U.S. Dist. LEXIS 102161, at *4

---

[1] Also holding, in considering the Patent Local Rules for the Northern District of California, that "issues concerning the validity and interpretation of such local rules [that "are not only unique to patent cases but also are likely to directly affect the substantive patent law theories"] are intimately 'involved in the substance of enforcement of the patent right,' *Sulzer Textil, 358 F.3d at 1363*, and must be governed by the law of this circuit." *O2 Micro Int'l Ltd.,* 467 F.3d at 1364.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION (DOC. 377)
FOR LEAVE TO AMEND INVALIDITY CONTENTIONS
Case No.: 11-CV-2226 SI                                     2

1  (N.D. Cal. Mar. 4, 2011); *see also Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA
2  (EMC), 2009 U.S. Dist. LEXIS 85425, *3 (N.D. Cal. Jun. 12, 2009) ("the critical issue is
3  whether or not Defendant exercised diligence in discovering the prior art."). "The burden is on
4  the movant to establish diligence rather than on the opposing party to establish a lack of
5  diligence." *O2 Micro Int'l Ltd.*, 467 F.3d at 1366. If the movant fails to carry its burden to show
6  diligence, there is no need to address the question of prejudice. *Id.* at 1368 (holding that there is
7  "no need to consider the question of prejudice" if a party seeking to amend did not demonstrate
8  diligence). "Decisions enforcing local rules in patent cases will be affirmed unless clearly
9  unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or
10 unsupported by any evidence." *O2 Micro Int'l Ltd.*, 467 F.3d at 1366-67.

## II. ARGUMENT

### A. DEFENDANTS DO NOT CARRY THEIR BURDEN TO SHOW DILIGENCE

Defendants' Motion should be denied for failing to identify any facts supporting their burden to show diligence. The following two sentences constitute the extent of Defendants' effort to show diligence:

- "Based on the Court's claim construction, Defendants **diligently** located additional, highly relevant prior art…" (Dkt. No. 377 at 3.) (emphasis added), and,

- "Upon receiving the Court's Claim Construction Order, Defendants acted **diligently** in identifying new prior art…." (Dkt. No. 377 at 5.) (emphasis added).

Notably, these two sentences apply exclusively to the New Prior Art Amendments Defendants seek. (*Id*. at 3 ("additional highly relevant prior art") and 5 ("identifying new prior art").

Thus, with respect to Defendants' proposed New Prior Art Amendments, this Motion should be denied because merely offering conclusory statements regarding diligence fails to establish good cause. *See West v. Jewelry Innovations, Inc.*, Case No. C 07-1812 JF (HRL),

2008 U.S. Dist. LEXIS 84928, at *9-*10 (N.D. Cal. Oct. 8, 2008) ("[The moving party] argues that its 'diligence' satisfies the good cause requirement because it made 'diligent inquires' to its contacts in the tungsten carbide industry and the inquiries 'bore fruit when they did.' However, as noted above, it does not provide any information about when or why it began the inquires, how it inquired, who its contacts in the industry were, or event what it inquired about. *The burden is on [the moving party] to establish diligence, and merely asserting that it made 'diligent' inquiries does not meet this burden.*") (emphasis added); *see also Acer Inc. v. Technology Properties Ltd.*, Case No. 5:08-cv-00877 JF/HRL, 2010 U.S. Dist. LEXIS 142472, *12-*13 (N.D. Cal. Sept. 10, 2010) (denying motion to amend where party had "not identified with particularity any information" that would support a finding of diligence).

And, with respect to Defendants' proposed Existing Art Amendments and proposed Other Amendments, this Motion should be denied because Defendants do not even claim, much less show, the diligence necessary to establish good cause.

### B. ALL EVIDENCE SHOWS DEFENDANTS' LACK OF DILIGENCE

Defendants' inability to marshal the required showing of diligence flows from their flawed premise that the Court's Claim Construction Order triggered the relevance of polarity-dependent/ferroelectric prior art references. Far from triggering their relevance, the Court's Claim Construction Order merely observed and took into account what Defendants, as the Court's reference to Defendants' expert illustrates, had already appreciated: "the specifications [of the Patents-in-Suit] contemplate the use of ferroelectric LCDs, a type of LCD that defendant's expert agrees is polarity-dependent." (Dkt. No. 351 at 9.)

While it may be overstatement to assert that the relevance of polarity-dependent/ ferroelectric displays was apparent to all parties from the date Positive filed suit—July 22, 2010—simply because the Patents-in-Suit explicitly disclosed the relevance of polarity-

dependent/ferroelectric displays, it is certainly true that Defendants appreciated the relevance of polarity-dependent/ferroelectric displays well before the Court's July 3, 2012 Claim Construction Order:

- By **May 30, 2012**, Defendants understood the relevance well enough to have included a Markman Tutorial slide dedicated solely to ferroelectric LCDs (Coburn Decl.[2] at ¶1. Ex. A attached thereto, "Slide 50 of Defendants' May 30, 2012 Markman Tutorial presentation entitled "Ferroelectric LCD".);
- Even earlier, by **January 9, 2012**, Defendants understood the relevance well enough that their expert, Timothy Drabik, could acknowledge and address the polarity dependence of ferroelectric LCDs in his expert declaration (Coburn Decl. at ¶2, Ex. B attached thereto, the January 9, 2012 Expert Declaration of Timothy Drabik, Ph.D. Regarding Three Patents to Mr. Hotto, in relevant part.);
- And even earlier still, by **October 26, 2011**, Defendants understood the relevance well enough to serve their original Invalidity Contentions with twenty-one (21) polarity-dependent/ferroelectric prior art references, seventeen (17) of which they charted (Coburn Decl. at ¶¶3-24, Exs. C-1 – C-21 attached thereto).

Defendants' longstanding awareness of the relevance of polarity-dependent/ferroelectric displays precludes Defendants from asserting that the Court's Claim Construction constitutes good cause to amend Defendants' Invalidity Contentions. *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C-08-2807 SBA (EMC), 2009 U.S. Dist. LEXIS 85425, *3 (N.D. Cal. Jun. 12, 2009) (holding that an unfavorable claim construction ruling does not constitute "good cause" where

---

[2] Declaration of Bradley Coburn in Support of Positive's Opposition to Defendants' Motion for Leave to Amend Invalidity Contentions, filed concurrently herewith [hereinafter "Coburn Decl."].

the moving party knew the potential for and anticipated the construction rendered).[3] The following demonstrates in detail that Defendants knew and acted on the relevance of polarity-dependent/ferroelectric displays in time to include a substantial body of such prior art in their October 26, 2011 Invalidity Contentions.

**1. Defendants Included and/or Charted Polarity-Dependent/ Ferroelectric References in Their October 26, 2011 Invalidity Contentions.**

Contrary to Defendants' assertion that polarity-dependent/ferroelectric prior art references were not relevant until the Court's July 3, 2012 Claim Construction Order, Defendants' October 26, 2011 Invalidity Contentions included at least twenty-two (21) ferroelectric/polarity-dependent references, seventeen (17) of which Defendants charted:

| REFERENCE | EXEMPLARY LANGUAGE | PAGE CITE TO 10/26/2011 INVALID. CHARTS |
|---|---|---|
| **1.** EP 0 416 172 A2 | "optical characteristics are changed by the polarities of the applied voltages" (Coburn Decl. ¶4, Ex. C-1 at p. 10, l. 26.) | 516-546; 469-493; 246-254 (Coburn Decl. ¶4.) |
| **2.** U.S. Pat. No. 4,778,260 | "optical characteristics vary depending upon the polarity of the applied voltage" (Coburn Decl. ¶5, Ex. C-2 at col. 4, ll. 19-20.) | 611-639; 547-572; 279-286 (Coburn Decl. ¶5.) |

---

[3] Patent L.R. 3-6 states that "[a] claim construction by the Court different from that proposed by the party seeking amendment" "*may*…*support* a finding of good cause." (emphasis added.) Patent L.R. 3-6 does not render a party's loss of a proposed claim construction as automatically dispositive of "good cause", as Defendants would have it. The operative analysis of the Patent L.R. 3-6 is whether "good cause" exists to amend. A claim construction that creates a truly new basis for investigating and discovering prior art that was not previously relevant to invalidity might support a finding of good cause (perhaps in a scenario where a court adopts a claim construction so different from any proposed or anticipated by the parties that it renders prior art relevant that the parties had no basis to consider previously). But, as demonstrated, such is not the case here. It seems unlikely that the example scenarios detailed in Patent L.R. 3-6 are intended to serve as talismanic replacements for the substantive inquiry of the "good cause" analysis. To show good cause the moving party must be diligent in both discovering the basis for its proposed amendments and, if so, moving to amend. In other words, losing a claim construction ruling does not entitle a party to amend its Invalidity Contentions where, as here, the party was fully aware of the purported basis for amending prior to the claim construction ruling.

| | | |
|---|---|---|
| **3.** U.S. Pat. No. 5,034,736 | "bistable liquid-crystal medium such as a ferroelectric material" (Coburn Decl. ¶6, Ex. C-3 at col. 1, ll. 7-8.) | 513-519 (Coburn Decl. ¶6.) |
| **4.** U.S. Pat. No. 5,091,723 | "ferroelectric liquid crystal display apparatus" (Coburn Decl. ¶7, Ex. C-4 at col. 1, ll. 10-11.) | 361-390; 311-336; 199-210 (Coburn Decl. ¶7.) |
| **5.** U.S. Pat. No. 5,136,282 | "ferroelectric liquid crystal apparatus" (Coburn Decl. ¶8, Ex. C-5 at Abstract.) | 63-75 (Coburn Decl. ¶8.) |
| **6.** U.S. Pat. No. 5,172,107 | "ferroelectric liquid crystal display" (Coburn Decl. ¶9, Ex. C-6 at col. 1, ll. 14-15.) | 640-673; 573-599; 76-89 (Coburn Decl. ¶9.) |
| **7.** U.S. Pat. No. 5,189,406 | "bistable elements, for example made from ferroelectric liquid-crystal material" (Coburn Decl. ¶10, Ex. C-7 at col. 1, ll. 11-12.) | *listed but not charted* |
| **8.** U.S. Pat. No. 5,264,839 | "display apparatus comprising a ferroelectric liquid crystal panel" (Coburn Decl. ¶11, Ex. C-8 at col. 1, ll. 12-13.) | 68-102; 81-108; 28-38 (Coburn Decl. ¶11.) |
| **9.** U.S. Pat. No. 5,321,811 | "display device using a ferro-electric liquid crystal" (Coburn Decl. ¶12, Ex. C-9 at col. 1, ll. 14-15.) | 391-420; 337-363; 211-218 (Coburn Decl. ¶12.) |
| **10.** U.S. Pat. No. 5,345,250 | "system and apparatus using a ferroelectric liquid crystal" (Coburn Decl. ¶13, Ex. C-10 at col. 1, ll. 13-14.) | 1000-1035; 828-856; 433-445 (Coburn Decl. ¶13.) |
| **11.** U.S. Pat. No. 5,488,495 | "ferroelectric liquid crystal display system" (Coburn Decl. ¶14, Ex. C-11 at Abstract.) | 1047-1074 (Coburn Decl. ¶14.) |
| **12.** U.S. Pat. No. 5,602,562 | "apparatus…using a ferroelectric liquid crystal" (Coburn Decl. ¶15, Ex. C-12 at col. 1, ll. 14-16.) | 273-295; 247-256; 111-125 (Coburn Decl. ¶15.) |
| **13.** U.S. Pat. No. 5,629,717 | "ferroelectric liquid crystal display panel" (Coburn Decl. ¶16, Ex. C-13 at col. 1, l. 13.) | 674-705; 600-626; 301-313 (Coburn Decl. ¶16.) |

| | | |
|---|---|---|
| **14.** U.S. Pat. No. 5,726,679 | "ferroelectric liquid crystal display apparatus" (Coburn Decl. ¶17, Ex. C-14 at col. 1, ll. 15-16.) | 1143-1182; 966-995; 472-494 (Coburn Decl. ¶17.) |
| **15.** U.S. Pat. No. 5,896,118 | "ferroelectric liquid crystal display panel" (Coburn Decl. ¶18, Ex. C-15 at col. 1, l. 15.) | 706-735; 627-655 (Coburn Decl. ¶18.) |
| **16.** U.S. Pat. No. 5,952,990 | "ferroelectric liquid crystal panel" (Coburn Decl. ¶19, Ex. C-16 at col. 1, l. 13.) | 1351-1380; 1157-1179; 657-666 (Coburn Decl. ¶19.) |
| **17.** EP 0 319 291 B1 | "ferroelectric liquid crystal display" (Coburn Decl. ¶20, Ex. C-17 at p. 3, l. 16.) | *listed but not charted* |
| **18.** EP 0 261 901 A2 | "ferroelectric liquid-crystal material" (Coburn Decl. ¶21, Ex. C-18 at p. 2, l. 2.) | 421-453; 364-417; 219-231 (Coburn Decl. ¶21.) |
| **19.** EP 0 368 117 B1 | "ferroelectric liquid crystal panel" (Coburn Decl. ¶22, Ex. C-19 at p. 1, ll. 9-10.) | 237-272; 219-246; 102-110 (Coburn Decl. ¶22.) |
| **20.** U.S. Pat. No. 4,902,107 | "ferroelectric liquid crystal" (Coburn Decl. ¶23, Ex. C-20 at Abstract.) | *listed but not charted* |
| **21.** U.S. Pat. No. 4,923,285 | "ferroelectric LCD for displaying information" (Coburn Decl. ¶24, Ex. C-21 at Abstract.) | *listed but not charted* |

The inclusion of so many polarity-dependent/ferroelectric references in Defendants' original Invalidity Contentions cannot be squared with the premise of Defendants' Motion. How can Defendants claim that they did not know to investigate polarity-dependent/ferroelectric art until the Court's Claim Construction Order when they clearly did so—extensively and on the record—long before the Order they now say precipitated their interest in polarity-dependent/ferroelectric art? Defendants indisputably appreciated the relevance of polarity-dependent/ferroelectric art early enough to locate, analyze, cite, and chart so many references by October 26, 2011—the date Defendants served their original Invalidity Contentions. Consequently, Defendants' own original Invalidity Contentions unequivocally controvert their unsupportable claim that they were diligent in locating the New Prior Art.

## 2. The New References Defendants Seek To Add Were Prominently and Repeatedly Before The Defendants at Least as Early as October 26, 2011.

Finally, Defendants' original Invalidity Contentions prevent Defendants from establishing diligence because they show that the New Prior Art has been right under Defendants' noses since October 26, 2011 at the latest. All three New Prior Art references appear as IDS references on the front page of various prior art references Defendants included in their October 26, 2011 Invalidity Contentions:

- U.S. Patent Nos. 5,321,811 and 5,488,495 include on their faces the Wahl and Lagerwall New Prior Art as cited references (Coburn Decl. ¶25, Exs. D-1 and D-2 thereto)—

- U.S. Patent Nos. 5,172,107; 5,345,250[4]; and 5,726,679 include on their faces the Inoue New Prior Art as a cited reference (Coburn Decl. ¶25, Exs. D-3 - D-5 thereto)—

[Patent 5,172,107 cover page excerpt, Kanno et al., Dec. 15, 1992, "DISPLAY SYSTEM INCLUDING AN ELECTRODE MATRIX PANEL FOR SCANNING ONLY SCANNING LINES ON WHICH A MOVING DISPLAY IS WRITTEN", with cited reference 4,964,699 10/1990 Inoue highlighted. JDG00000584]

[Patent 5,345,250 cover page excerpt, Inoue et al., Sep. 6, 1994, "DATA PROCESSING SYSTEM AND APPARATUS AND DISPLAY SYSTEM WITH IMAGE INFORMATION MEMORY CONTROL", with cited reference 0288168 10/1988 European Pat. Off. highlighted. JDG00000792]

[Patent 5,726,679 cover page excerpt, Kanno et al., *Mar. 10, 1998, "DISPLAY SYSTEM FOR SELECTIVELY DESIGNATING SCANNING LINES HAVING MOVING DISPLAY DATA THEREON", with cited reference 4,964,699 10/1990 Inoue highlighted. JDG00000941]

This lays to rest any doubt that the New Prior Art was in any way difficult to locate and further cements the impossibility of Defendants showing their diligence in waiting until November 7, 2012 to seek to add the New Prior Art. Defendants' disingenuous re-writing of the facts to peg the date of the Court's Claim Construction Order as the starting point of the diligence analysis suggests that Defendants understand the futility of their burden in the face of the factual record they created over a year ago. Regardless, the best that might be said is that

---

[4] U.S. Patent No. 5,345,250 cites EP 0 288 168, which is the European patent counterpart to the Inoue New Prior Art. (Coburn Decl.at ¶27, Ex. E attached thereto, Bibliographic Data re Inoue New Prior Art.)

Defendants' Motion results from carelessness dating back more than thirteen (13) months. And, "[a]s this District has explained, 'carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" *West v. Jewelry Innovations, Inc.*, Case No. C 07-1812 JF (HRL), 2008 U.S. Dist. LEXIS 84928, at *6-*7 (N.D. Cal. Oct. 8, 2008) (quoting *MEMC Electronic Materials v. Mitsubishi Materials Silicon Corp.*, 2004 WL 5363616, at *5 (N.D. Cal. Mar. 2, 2004)).

### C. UNDUE PREJUDICE

Defendants misunderstand the role of the undue prejudice analysis in determining whether Defendants should be granted leave to amend their Invalidity Contentions. The question of undue prejudice is not, as Defendants' Motion frames the analysis, a standalone, independently sufficient factor weighed separately regardless of movant's diligence. (*See* Dkt. No. 377 at 1.) Rather, the question of undue prejudice is reached only after a movant has carried its burden and shown diligence. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006). Even then, as Patent L.R 3-6 clearly sets forth, the question of undue prejudice serves as a limitation on a party's ability to amend its invalidity contentions despite, not in lieu of, diligence. *See Acer Inc. v. Technology Properties Ltd.*, Case No. 5:08-cv-00877 JF/HRL, 2010 U.S. Dist. LEXIS 142472, *12-*13 (N.D. Cal. Sept. 10, 2010) (citing *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992) (citation omitted) ("Although the existence of degree of prejudice to the party opposing the modification might supply additional reasons to deny the motion, the focus of the [good cause] inquiry [under FRCP 16(b)] is upon the moving party's reason for seeking the modification. If that party was not diligent the inquiry should end.")). Here, Defendants have not carried their burden to show diligence. Accordingly, there is no showing of diligence against which undue prejudice must be weighed.

## III. CONCLUSION

To amend their October 26, 2011 Invalidity Contentions, Defendants must show good cause. To show good cause, the Defendants must show diligence in discovering the basis of their proposed amendments. As their offered basis, Defendants' assert that polarity-dependent/ferroelectric displays were not relevant until the Court's July 3, 2012 Claim Construction Order. (Dkt. No. 377 at 2-3.) Defendants claim that only upon the Court's Claim Construction Order were they motivated to investigate polarity-dependent/ferroelectric references. (Dkt. No. 377 at 1.)

Yet the record unequivocally shows otherwise. Defendants have long known what anyone who reads the Patents-in-Suit would know—that polarity-dependent/ferroelectric displays are relevant because they are discussed in the specifications of the Patents-in-Suit. Defendants not only investigated and included 21 polarity-dependent/ferroelectric in their October 26, 2011 Invalidity Contentions, but the New Prior Art they seek to add was listed on the front page of numerous of their Invalidity Contention references. Defendants' expert opined on polarity dependency/ferroelectric-related issues on January 9, 2012. And Defendants presented a slide dedicated to ferroelectrics at the May 30, 2012 Markman Tutorial.

Failing to carry their burden to show diligence, Defendants fail to explain the stark contrast between their premise and the facts. Instead, in the face of the factual record that belies their claim of diligence, Defendants now conveniently say that the Court's July 3, 2012 Claim Construction Order caused them to appreciate the relevance of polarity-dependent/ferroelectric displays. Thus, Defendants seek to amend their Invalidity Contentions on the basis of a false premise supported by conclusory claims of diligence refuted by the factual record they created over a year ago. Accordingly, Positive respectfully requests that the Court deny Defendants' Motion for Leave to Amend Invalidity Contentions.

|   |   |   |
|---|---|---|
| 1 |   | Respectfully Submitted, |
| 2 | Dated: November 30, 2012 | /S/ Bradley D. Coburn |
|   |   | J. Scott Denko (*pro hac vice*) |
| 3 |   | (Texas State Bar No. 00792457) |
|   |   | Bradley D. Coburn (*pro hac vice*) |
| 4 |   | (Texas State Bar No. 24036377) |
|   |   | Steven J. Lauff (*pro hac vice*) |
| 5 |   | (Texas State Bar No. 24013011) |
|   |   | DENKO COBURN LAUFF LLP |
| 6 |   | 1501 S. MoPac Expy, Suite A315 |
|   |   | Austin, TX 78746 |
| 7 |   | Telephone: (512) 906-2074 |
|   |   | Facsimile: (512) 906-2075 |
| 8 |   | Email: denko@dcllegal.com |
|   |   | coburn@dcllegal.com |
| 9 |   | lauff@dcllegal.com |
| 10 |   | Perry R. Clark |
|   |   | LAW OFFICES OF PERRY R. CLARK |
| 11 |   | 825 San Antonio Road |
|   |   | Palo Alto, CA 94303 |
| 12 |   | Telephone: (650) 248-5817 |
|   |   | Facsimile: (650) 618-8533 |
| 13 |   | Email: perry@perryclarklaw.com |
| 14 |   | Attorneys for Plaintiff |