United States District Court
Northern District of California

POSITIVE TECHNOLOGIES, INC.,

    Plaintiff,

v.

SONY ELECTRONICS, INC, et al.,

    Defendants.

Case No.: 11-cv-2226 SI (KAW)

ORDER PERMITTING DISCOVERY OF SALES INFORMATION FOR NON-ACCUSED PRODUCTS

Plaintiff Positive Technologies and Defendants Amazon and Barnes & Noble ("Defendants") filed a joint statement regarding Defendants' joint motion for a protective order barring discovery of sales information for non-accused products. Dkt # 375. Judge Illston ordered the parties to submit further briefing. Dkt # 386. The parties complied, and the dispute was referred to the undersigned.

At the February 7, 2013 hearing on the dispute, Plaintiff was represented by Bradley Coburn and Perry Clark; Amazon was represented by Stephen Joncus; and Barnes & Noble was represented by Rachel Capoccia.

## I. Background

Plaintiff claims that certain Nook and Amazon E-Readers infringe on three of its patents—numbered '457, '558 and '588—relating to updating a matrix display on an E-Reader's screen. Defendants refer to the patented invention as a "controller drive scheme." Dkt # 390 at 4. One of Plaintiff's patents lists six means—providing signals representing images to be demanded from individual elements in the display means, storing the signals, providing signals representing the difference between the signals for the first and second means for the individual elements in the display means, changing the images in accordance with these signals, determining the temperatures of the elements, and modifying the operation of the change of the images in

accordance with the temperatures—all in combination with display means.  Patent No. '588.  The three patents share the same specification and figures.  Claim Construction Order, Dkt # 351 at 2.  Thus, the patented invention might also be described as a process involving the microcontroller, memory, temperature, drivers and display of an E-Reader.

Plaintiff seeks discovery of sales and revenue information for 1) E-Reader content and services that are used directly on the E-Readers that allegedly contain Plaintiff's patented invention, such as eBooks, eMagazines, wireless connectivity, games and applications, and software upgrades; 2) accessories and protection plans which are typically sold contemporaneously with the E-Readers, such as covers, cases, reading lights, and warranties; and 3) information regarding the relationship between the accused E-Readers and the sale of the non-accused content and accessories.  Defendants ask the Court to enter a protective order barring the discovery of this information.

Defendants argued that discovery regarding non-accused products is only remotely related to any damages analysis.  To be entitled to the discovery, Defendants argued, Plaintiff must establish that the entire market value rule (EMVR) applies—that is, that the patent-related feature of the E-Reader was the basis for customer demand.

Judge Illston's December 3, 2012 order for supplemental briefing discussed the parties' positions.  The Court rejected Defendants' argument that Plaintiff had to establish that the EMVR rule applied in order to obtain the discovery, and this Court agrees.  Distinguishing between evidence potentially relevant to a royalty rate, rather than a royalty base, the Court wrote:

> Positive has made a showing that the confidential sales information for the non-accused products is discoverable because it is essential to Positive's reasonable royalty rate calculation, as part of its damages analysis. . . . First, Positive seeks nonaccused product discovery in order to calculate a reasonable royalty rate, which is sometimes defined as a percentage that is multiplied by the dollar amount of infringing sales of the accused product – the royalty base – in order to arrive at a reasonable royalty damages sum . . . . Second, even if Positive seeks discovery of non-accused products to use as part of its calculation of the reasonable royalty base, such discovery may be permissible depending on the nature of the royalty base at issue.
>
> . . . However, upon preliminary review, the discovery Positive seeks appears to be broader than what is merited by Positive's damages argument. For example, to the

2

> extent Positive seeks gross sales and revenue information about non-accused products, Positive's request appears overly broad. However, other requests, such as those requests for documents relating to any relationship between selling the accused devices and sales of non-accused products, appear to be justified by Positive's damages argument. The latter type of request appears to be related to Positive's royalty rate position – that there is some relationship between the inclusion of Positive's patented technology in the accused products and sales of non-accused products. The trouble here, as defendants Amazon and Barnes & Noble observe, is that Positive has not come forward with a more detailed damages position that would enable the Court to resolve this dispute.

Dkt # 386. The Court ordered Plaintiff to file a supplemental brief explaining the scope of the information sought and its damages position.

Plaintiff's supplemental brief stated that it was willing to address the Court's concern regarding overbreadth by narrowing the time period of the requests from the date of suit until the expiration of the patents-in-suit. Plaintiff explained its damages position by stating that it sought the discovery as potentially relevant to calculating a royalty rate, rather than a royalty base, under *Georgia-Pacific* factors 6, 8, and 11.

Defendants' supplemental brief argued that even under the *Georgia-Pacific* factors, the determinative issue is whether the Defendants' use of the patented invention—a controller drive scheme—generates sales of the non-accused products about which the discovery is sought. Defendants argue that Plaintiff has not linked sales of the non-accused products to the patented specialty, and therefore is not entitled to the discovery.

Defendants further argue in the joint statement that the discovery sought is "extremely sensitive and confidential," but do not develop this argument. Dkt # 375 at 2. Defendants do not explain why this should bar the disclosure of the discovery, especially since the discovery will be produced pursuant to a protective order.

## II.  Analysis

### A.  Applicable Law

The federal rules provide that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevance has been broadly

construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947).

In patent cases where the plaintiff does not claim lost profits, damages are assessed by determining the "reasonable royalty" the plaintiff would have received through arms-length bargaining. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The court tries to calculate the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before the infringement began. *See id.*, citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).[1]

---

[1] *Georgia-Pacific* sets out the following fifteen factors for determining a reasonable royalty:

1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.
2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.
6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
7. The duration of the patent and the term of the license.
8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.
10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.
11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

4

In most cases, the methodology attempts to set a percentage royalty rate, which is then multiplied by the dollar amount of infringing sales—the royalty base—to calculate the dollar amount of reasonable royalty damages. *See Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 724 (E.D. Tex. 2011) ("Calculation of a reasonable royalty requires determination of two separate and distinct amounts: 1) the royalty base, or the revenue pool implicated by the infringement and 2) the royalty rate, or the percentage of that pool 'adequate to compensate' the plaintiff for the infringement.").

"Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). A royalty base should be calculated based on the "'smallest salable patent-practicing unit.'" *Id.* (quoting *Cornell Univ. v. Hewlett–Packard Co.*, 609 F. Supp. 2d 279, 283, 287–88 (N.D.N.Y. 2009)). There is an exception to this rule known as the entire market value rule (EMVR). The EMVR applies only if "the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'" *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (citing *Lucent*,

---

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
14. The opinion testimony of qualified experts.
15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee- who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention- would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

580 F.3d at 1336). In such cases, the royalty base can consist of not only the value of the sale of patented component alone, but the entire value of the accused product.

### B. Under the broad discovery standards, Plaintiff is entitled to the discovery pursuant to *Georgia-Pacific* factors 6, 8 and 11.

Plaintiff wants to obtain the discovery to calculate the royalty rate, not the royalty base. Plaintiff states that it will not attempt to use the EMVR to get evidence of sales of non-accused products admitted as part of the royalty base analysis.

As explained above, a reasonable royalty is determined by calculating the royalty the parties would have agreed upon if they had negotiated it prior to the infringement. *See Lucent Technologies*, 580 F.3d at 1324. The *Georgia-Pacific* factors lay out different considerations that might be relevant to the hypothetical negotiation.

Specifically, Plaintiff argues that the discovery is probative of *Georgia-Pacific* factors 6 ("The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales"), 8 ("The established profitability of the product made under the patent; its commercial success; and its current popularity"), and 11 ("The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use").

Here, the patented specialty is a display controller drive scheme, as described above.[2] Thus, under Factor 6, Plaintiff is entitled to the discovery to the extent that it is reasonably calculated to lead to the discovery of admissible evidence concerning: the display controller drive scheme's promotion or generation of sales of Defendants' other products or items; the display controller drive screen's value to Defendants as a generator of sales of Defendants' non-patented items; and the extent of such sales. This alone does not encompass all of the discovery of non-accused products sought by Plaintiff.

---

[2] Plaintiff argues that the term "patented specialty" in factor 6 means the entire accused product, that is, the E-Reader that contains the display controller scheme. Plaintiff cites no authority to support this proposition, and the Court rejects Plaintiff's proposed definition, as it is at odds with the plain meaning of the phrase. Instead, the Court understands the phrase "patented specialty" to be equivalent to the patented invention, as described in the claim construction order.

But Plaintiff is further entitled to discovery that is reasonably calculated to lead to the discovery of admissible evidence under Factor 8, the commercial success and popularity of the E-Readers at issue, and Factor 11, the use Defendants have made of the display controller drive scheme, and the value of that use. Plaintiff is therefore entitled to discovery regarding the use Defendants have made of the display controller drive scheme, the value of that use, and the resulting commercial success and popularity of the E-Readers. The money that Defendants make on both content and accessories sold with their E-Readers is probative of the value of Defendant's use of the display controller scheme, as well as the commercial success and popularity of the E-Readers. Thus, Plaintiff is entitled to the discovery it seeks, as narrowed in its supplemental brief.

This result comports with the rationale underlying the *Georgia-Pacific* case. If the parties had negotiated a price for using Plaintiff's patented specialty in Defendants' E-Readers before the alleged infringement began, the parties might reasonably have considered not only the revenue Defendants stood to gain through sales of the E-Readers containing the improved-quality displays, but also through sales of accessories and content. This is especially true if, as Plaintiff argued at the hearing, Defendants sell their E-Readers at a low price to induce customers to buy E-Books and magazines, and therefore make the bulk of their revenue from sales of content.

### C. While *LaserDynamics* may limit admissibility, it does not limit discoverability of the evidence.

Defendants argue that the Federal Circuit's decision in *LaserDynamics, Inc. v. Quanta Computers, Inc.*, 694 F. 51 (Fed. Cir. 2012) trumps the *Georgia-Pacific* factors and protects evidence of sales of non-accused products from discovery. The Court disagrees.

*LaserDynamics* held that, in cases where the EMVR did not apply, it would be error to admit into evidence sales and revenue information pertaining to the value of an entire multi-component product, rather than sales and revenue information for the smallest patent-practicing unit in the product. *Id.* at 67-68. *LaserDynamics* involved a patent for an optical disc discrimination technique that enabled the disc drive to automatically determine the type of disc that was inserted into the drive. *Id.* at 56-57. Thus, it was error to calculate a royalty base on the market value of laptop computers that were sold containing the disc drives, rather than on the

7

"patent-practicing [optical disc drive] alone." *Id.* at 68. Moreover, it was error to admit sales and revenue information pertaining to the market value of the laptops containing the disc drives into evidence, regardless of whether the evidence was supposedly relevant to the royalty *rate* or to the royalty *base*. *Id.* at 68 ("Whether called 'product value apportionment' or anything else, the fact remains the royalty was expressly calculated as a percentage of the entire market value of a laptop computer rather than a patent-practicing ODD alone. This, by definition, is an application of the entire market value rule."). *See also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) ("[t]he Supreme Court and this court's precedents do not allow consideration of the entire market value of accused products for minor patent improvements simply by asserting a low enough royalty rate"). *LaserDynamics* explained the rationale behind this rule: "Admission of such overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" 694 F.3d at 68.

Here, Defendants cite *LaserDynamics* in an attempt to deny Plaintiff discovery of sales and revenue information for content and accessories sold on or with the accused E-Readers. But *LaserDynamics* limits admissibility, not discoverability. Plaintiff claimed at the hearing, and Defendant did not disagree, that the smallest patent-practicing salable units are the E-Readers containing the display controller drive scheme. Unless the EMVR applies in this case—which Plaintiff has repeatedly disavowed—the trial judge in this case may, at some point, rule that *LaserDynamics* and *Uniloc* limit the admissibility of at least some information regarding sales of content and accessories on the accused E-Readers, because the smallest patent-practicing salable unit is the E-Reader itself.

But this Court will not bar discovery on this basis. Relevance for discovery is broadly construed. *See Barnes & Noble, Inc. v. LSI Corp.*, C 11-02709 EMC LB, 2012 WL 1564734 (N.D. Cal. May 2, 2012) (there is a "broad mandate in favor of the relevance that is conferred by Rule 26(b)(1)"). At this stage of the proceedings, it is unclear whether some of the discovery sought may be correlated to the value of Plaintiff's patented invention, and therefore admissible.

8

Defendants argue that Plaintiff has produced no evidence to show that its patented invention is correlated to the value of the sales of the non-accused products. But Plaintiff has made a preliminary showing of relevance for discovery purposes pursuant to the *Georgia-Pacific* factors, and that is all that it is required to do at this point. It would be improper under Rule 26 to expect Plaintiff show that the discovery it seeks is admissible when it has not yet obtained the discovery.

### III. Conclusion

For the reasons explained above, Defendants' joint motion for a protective order barring the discovery of sales information for non-accused products is denied.

IT IS SO ORDERED.

Dated: February 26, 2013

KANDIS A. WESTMORE
UNITED STATES MAGISTRATE JUDGE

9